# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**
**January 25, 2024**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 22-634** (Harrison County 20-F-142-3)

**Michelle Boggs,**
**Defendant Below, Petitioner**


## MEMORANDUM DECISION


Petitioner Michelle Boggs appeals the order of the Circuit Court of Harrison County, entered on July 7, 2022, resentencing her (for the purpose of appeal) for her 2021 conviction of death of a child by a parent, guardian, or custodian, or by knowingly allowing child abuse by any other person.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision is appropriate. See W. Va. R. App. Proc. 21.

In September 2020, Ms. Boggs was indicted on one count of death of a child by a parent, guardian, custodian, or other person by child abuse in violation of West Virginia Code § 61-8D-2a. The victim was Ms. Boggs's five-year-old grandson ("the child"), for whom she acted as the legally-appointed guardian. Ms. Boggs's daughter (the child's aunt) and son-in-law, both of whom lived with Ms. Boggs and the child, were named in the same indictment, each on the same charge, but the three were tried separately. At the conclusion of her four-day trial, Ms. Boggs was convicted by a jury.

Ms. Boggs asserts a single assignment of error. She argues that there was insufficient evidence presented at trial to support her conviction. "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996)). Furthermore,

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable

---

[1] Ms. Boggs appears by counsel Jason T. Gain of Losh Mountain Legal Services. Respondent State of West Virginia appears by Attorney General Patrick Morrisey and Assistant Attorney General Mary Beth Niday.

1

to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Our review of the appendix record on appeal satisfies us that sufficient evidence was presented to convict Ms. Boggs under West Virginia Code § 61-8D-2a(b), which provides:

> If any parent, guardian or custodian knowingly allows any other person to maliciously and intentionally inflict upon a child under the care, custody or control of such parent, guardian or custodian substantial physical pain, illness or any impairment of physical condition by other than accidental means, which thereby causes the death of such child, then such other person and such parent, guardian or custodian are each guilty of a felony.

The child was taken unconscious to a hospital emergency room where an attending physician found him "covered head-to-toe in bruises" with a laceration of his scrotum. He had a subdural hematoma and resultant brain swelling. A physician who treated the child at Ruby Memorial Hospital, where he was transported by life-flight, also noticed that the child had two black eyes and a laceration to his penis. The child was declared dead two days after he arrived at the first hospital. Several physicians testified that the child's trauma was "non-accidental." A sexual assault nurse examiner who examined the child testified that the child's was the worst case of child abuse she had seen at that time, and a forensic pathologist testified that his death was caused by blunt force trauma to the head.[2]

The women who initially took the child to the hospital—Ms. Boggs and her daughter—implausibly reported that the child "laid down to take a nap and that he just didn't really wake up." A West Virginia State Police Bureau of Investigations investigator testified that he interviewed Ms. Boggs twice—once on the day that the child was taken to the hospital and again the following day—and she gave inconsistent accounts. Importantly, Ms. Boggs told the investigator that "people were afraid of her son-in-law" and she described "the stuff she witnessed or heard [the son-in-law] doing when he was down in the basement yelling at [the child], grabbing him, causing injuries. . . ."

Ms. Boggs testified in her own defense, and she explained that she generally stayed at the home she shared with the child, her daughter, and son-in-law only two days a week, and that she left most of the child's care to her daughter and son-in-law. However, she testified that she once saw her son-in-law "grab" the child's face, and she further testified that the child reported to her that the son-in-law made him "stand all day." She testified that when she did not like the way her son-in-law treated the child, she had to relay her concerns through her daughter because she "wasn't allowed" to talk to the son-in-law.

Under West Virginia Code § 61-8D-2a(b), it is criminal conduct for a "guardian," such as Ms. Boggs, "to knowingly allow[] any other person to maliciously and intentionally inflict upon a

---

[2] According to Ms. Boggs's theory of the case, the child routinely inflicted harm on himself.

child under [her] care, custody or control . . . substantial physical pain . . . which thereby causes the death of such child. . . ." The evidence described above is sufficient to support a conviction under this statute. Ms. Boggs was the child's legal guardian and his care was entrusted to her. Under her care, the child displayed physical injuries that ultimately led at least one health care provider to describe his situation as the "worst case of child abuse" she had encountered. The description of these injuries was such that the danger to the child would have been evident. Ms. Boggs informed the criminal investigator that she witnessed her son-in-law's poor treatment of the child. Her trial testimony that she could not speak to her son-in-law suggested that she, too, feared him. Moreover, she testified at trial that though her daughter expressed an interest in adopting the child, she would not agree because she believed that her daughter and son-in-law were interested in beneficiary payments the child received, and not in the child himself. Despite these alarming indicators that "substantial physical pain" was inflicted on the child, Ms. Boggs continued to leave the child in a dangerous situation for substantial periods of time. We find no error in the conviction under these facts.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 25, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

3